Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7110 | **DATE** | 10/29/2001 |
| **CASE TITLE** | Urban Outfitters Inc vs. DPIC Companies Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Urban Outfitter's Amended Petition to Enforce Subpoena is granted in part and denied in part (#4). All matters relating to the referral of this action having been resolved, the case is returned to the Assigned Judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **2** number of notices |
| | No notices required. | **FILED** | **NOV 02 2001** date docketed |
| 2 | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 29 2001 | docketing deputy initials |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | MICHAEL W. DOBBINS | 10/29/01 |
| ✓ | Copy to judge/magistrate judge. | CLERK, U.S. DISTRICT COURT | date mailed notice |
| AC6 | courtroom deputy's initials | Date/time received in central Clerk's Office | FT/ secy mailing deputy initials |

Document Number: 19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| URBAN OUTFITTERS, INC. | ) | |
| | ) | |
| Petitioner | ) | Case No. 01 C 7110 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| DPIC COMPANIES, INC. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| Respondent. | ) | |
| | ) | NOV 0 2 2001 |

DOCKETED

## MEMORANDUM OPINION AND ORDER

Currently before the Court is petitioner Urban Outfitters, Inc.'s Amended Petition To Enforce Subpoena. Urban Outfitters seeks to discover documents in the possession of DPIC Companies, Inc. ("DPIC"), an insurance company located in Illinois, that relate to DPIC's insured, Mary Swanson and Swanson Design Studios, and work performed by the insured at 117-119 East Grand River Avenue, East Lansing, Michigan. DPIC objects to the subpoena on the grounds that the documents Urban Outfitter's seeks are protected by the attorney-client privilege and work-product doctrine. For the reasons set forth below, Urban Outfitter's Petition is granted in part and denied in part.

## BACKGROUND

This proceeding relates to an action pending in the United States District Court for the Western District of Michigan, EL-GR, LLC v. Urban Outfitters, Inc., Case No. 5:00-CV-91. The Michigan lawsuit stems from an agreement by EL-GR, LLC ("EL-GR") to lease space to Urban Outfitters. On August 17, 2000, Urban Outfitters served a subpoena on Mary Swanson

19

and Swanson Design Studios[1], an architectural firm hired by EL-GR to design space for Urban Outfitters. After receiving the subpoena, Mary Swanson contacted attorney Robert Beck for guidance in complying with the subpoena. Because so few documents were involved, approximately 40 documents, and because Mr. Beck's office was located more than one hour from Ms. Swanson's office, Ms. Swanson faxed her file on the EL-GR project to Mr. Beck for review. Following his review, Mr. Beck informed Ms. Swanson that the documents were relevant and not privileged, and that Ms. Swanson should produce the documents to Urban Outfitters. Mr. Beck did not personally review the documents that were actually forwarded to Urban Outfitters and neither, apparently, did Ms. Swanson. Ms. Swanson produced to Urban Outfitters the entire file as well as an additional letter from Ms. Swanson's insurance carrier, DPIC, that allegedly was not included with the documents forwarded to Mr. Beck for review. In this letter, dated January 11, 2000, DPIC acknowledged receipt of a potential claim from Ms. Swanson regarding the EL-GR project.

On February 8, 2001, Urban Outfitters served a subpoena on DPIC seeking to discover any and all documents relating to Ms. Swanson, EL-GR, and the build-out on Grand River Road, particularly those documents indicating that Ms. Swanson's design work for EL-GR was deficient. In subsequent discussions with DPIC and Mr. Beck, Urban Outfitters referenced the January 11, 2000 letter produced by Ms. Swanson. Mr. Beck explained that he was not aware of such a document, or that such a document had been produced to Urban Outfitters, and requested

---

[1] For purposes of simplicity, and because the distinction between Ms. Swanson and Swanson Design Studios is irrelevant for purposes of this opinion, the Court will simply refer to Ms. Swanson throughout the opinion.

that Urban Outfitters forward a copy of the January 11, 2000 letter to him. On February 27, 2001, Mr. Beck forwarded a letter objecting to the subpoena on the grounds of attorney-client privilege and/or the work-product doctrine. Urban Outfitters failed to forward a copy of the January 11, 2000 letter to Mr. Beck, and Mr. Beck did not contact Urban Outfitters again about the lapse or the return of the document. On March 19, 2001, DPIC objected to the subpoena on the grounds of attorney-client privilege and work-product doctrine.

Urban Outfitters filed this Petition on September 25, 2001, seeking to compel DPIC's production of the documents. Judge Guzman subsequently referred the matter to this Court. On October 24, 2001, the parties appeared before this Court for a hearing, where the Court ordered DPIC to produce the documents listed in its privilege log for an *in camera* inspection.

## DISCUSSION

DPIC claims that the attorney-client privilege and/or the work-product doctrine protect the documents Urban Outfitters seeks.[2] Urban Outfitters disagrees, and alternatively argues that, even if these privileges would otherwise apply, Ms. Swanson waived the privileges by producing the January 11, 2000 document to Urban Outfitters. Before deciding whether the documents are privileged and, if so, whether the privilege has been waived, the Court must first determine what law governs the resolution of this dispute.

### A. Illinois Law Applies

Pursuant to Federal Rule of Evidence 501, federal courts presiding over a diversity action should look to state law, not federal law, in determining the existence and scope of the attorney-

---

[2] DPIC concedes that document number 8 on its privilege log is not entitled to work-product protection.

3

client privilege. The instant case presents a fairly novel twist, as both parties agree that state law applies, but debate which state's law --Illinois' or Michigan's -- governs the question of privilege. A true conflict of law exists, as Illinois law recognizes an attorney-client privilege that extends to communications between insurers and insureds, *Rapps v. Keldermans*, 257 Ill. App.3d 205, 628 N.E.2d 818, 822 (1st Dist. 1993), while Michigan law does not, *Koster v. June's Trucking, Inc.*, 244 Mich. App. 162, 625 N.W.2d 82, 84 (Mich. App. 2000).

Although Rule 501 directs that the law of the forum state controls, the Rule does not specify which state is the forum state in a discovery dispute arising out of litigation in another state. Illinois law provides that "[d]iscovery in Illinois in aid of an action pending in another state must be conducted pursuant to Illinois rules." *Mistler v. Mancini*, 443 N.E. 2d 1125, 1127-28 (Ill. App. 2d Dist. 1983). The few courts that have confronted the issue of which state's attorney-client privilege law applies when a discovery dispute takes place in a forum other than in the underlying litigation's forum have determined that the law of the state where the discovery dispute is being resolved controls. *See, Roberts v. Carrier Corp.*, 107 F.R.D. 678, 685-86 (N.D. Ind. 1985). *See also, Palmer v. Fisher*, 228 F.2d 603 (7th Cir. 1955), *rev'd on other grounds* (applying Illinois privilege law to CPA subpoenaed in Illinois in a Florida lawsuit); *In re Ramaekers*, 33 F. Supp.2d 312, 316 (S.D.N.Y. 1999) (federal courts presiding over discovery disputes related to litigation in a different forum have "uniformly applied the law of the circuit in which the subpoena issued.")

The Court agrees that Illinois has a significant interest in applying its laws to discovery disputes in its courts. *See generally, CSX Trans. v. Lexington Ins. Co.*, 187 F.R.D. 555, 558-59 (N.D. Ill. 1999) (applying Illinois law to discovery issue in coverage dispute between insured and

4

insurer even though Florida law governed substantive issues.). Therefore, Illinois law, which recognizes that the attorney-client privilege applies to communications between insureds and insurers, applies in this case.

**B. The Attorney-Client Privilege and Work-product Doctrine**

Under Illinois law, the attorney-client privilege protects confidential communications between an insured and an insurer. Il. Sup. Ct. R. 210(b)(2); *People v. Ryan,* 30 Ill.2d 456, 460-61, 197 N.E.2d 15, 17-18 (1964). The privilege protects communications originating from either the insurer or the insured. *Midwesco-Paschen Joint Venture v. IMO Indus. Inc.,* 265 Ill. App. 3d 654, 660-61, 638 N.E.2d 322, 327 (1st Dist. 1994). The party seeking to assert the privilege bears the burden of establishing 1) the identity of the insured; 2) the identity of the insurance carrier; 3) the duty to defend the lawsuit; and 4) that a communication was made between the insured and the agent of the insurer. *Rapps,* 628 N.E.2d at 822 . DPIC and Ms. Swanson have satisfied their burden of establishing that the privilege applies to the communications at issue, as claimed.

Similarly, the work-product doctrine protects many of the documents that Urban Outfitters seeks to discover. Although state law controls attorney-client privilege issues, federal law governs the work-product doctrine. F.R.C.P. 26(b)(3). Absent a showing of substantial need, the work-product doctrine protects documents prepared in anticipation of litigation. *Id.*

Because of the nature of their work, documents generated by insurance companies investigating claims or potential claims present special challenges when applying the work-product doctrine. "While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the

5

'remote prospect of litigation' and materials prepared because 'some articulable claim, *likely* to lead to litigation . . . has arisen." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 977 (7th Cir. 1996) (citations omitted.). However," [i]f a document would have been created regardless of whether litigation was anticipated or not, it is not work product." *Caremark, Inc., v. Affiliated Computer Serv. Inc.,* 195 F.R.D. 610, 616 (N.D. Ill. 2000) (noting the dual purposes of insurance investigations and documents).

In the instant case, the documents were created after the underlying lawsuit was filed, indicating that the prospect of litigation was very real. A review of the documents listed on the privilege log supports DPIC's assertion that the documents would not have been created absent the threat of litigation. Because Urban Outfitters has not made a showing of substantial need, the Court finds that the work-product doctrine also protects the documents at issue, as claimed.

### C. Ms. Swanson's Disclosure of Protected Material Waives the Privilege

Having determined that the documents are privileged is not the end of the Court's inquiry; the Court must now decide whether Ms. Swanson's disclosure to Urban Outfitters of the January 11, 2000 letter waives the claimed privilege.[3] Citing *People v. Murry*, 305 Ill. App.3d 311, 316, 711 N.E.2d 1230, 1235 (2nd Dist. 1999), DPIC argues that Illinois courts apply the subjective test to determine waiver, and that, under the subjective test, an inadvertent disclosure can never result in waiver of a privilege. Although the *Murry* court did apply the subjective test, Illinois courts apply not only the subjective test, but the objective and balancing tests as well. *See*

---

[3] Caselaw discussing waiver of the attorney-client privilege applies equally to the waiver of the work-product doctrine. *Dalen*, 230 Ill. App. 3d at 28, 594 N.E.2d at 1371. *But see, Canel v. Lincoln Nat'l Bank*, 179 F.R.D. 224, 226 (N.D. Ill. 1998) (noting that subject matter waiver does not apply to "opinion" documents covered by the work-product doctrine).

*Peters v. The Northern Trust Co.*, No. 92 C 1647, 2001 WL 1002499, at *2 (N.D. Ill. Aug. 29, 2001) (noting that the court in *People v. Murry* explicitly recognized the viability of the other tests.) The Court finds that the balancing test is the most appropriate method for assessing whether waiver occurred. *See Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18, 594 N.E.2d 1365, 1371-72 (2d Dist.1992) (adopting the reasoning of *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 208 (N.D. Ind. 1990) and applying the balancing test);. *Wsol v. Fiduciary Management Assocs., Inc.*, No. 99 C 1719, 1999 WL 1129100, at *6 (N.D. Ill. December 7, 1999) ("judges of this court increasingly rely upon a balancing test to decide on a case-by-case basis whether the circumstances of inadvertent disclosure warrant a finding that the privilege has been waived.")

The balancing test looks to five factors to determine if waiver has occurred: 1) the reasonableness of the precautions taken to protect the document; 2) the time taken to rectify the error; 3) the scope of discovery; 4) the extent of the disclosure; and 5) the overriding issue of fairness. *Ozite*, 230 Ill. App.3d at 28, 594 N.E.2d at 1371; *Tokar v. City of Chicago*, No. 96 C 5311, 1999 WL 138814, at *2 (N.D. Ill. Mar. 5, 1999). An application of these factors to the instant case supports a finding of waiver. First, reasonable precautions were not taken to ensure the confidentiality of Ms. Swanson's communications with DPIC. The production occurred within the context of formal discovery and pursuant to attorney review. However, the review was conducted via fax – not in person -- and neither Mr. Beck nor Ms. Swanson reviewed the package of documents that was ultimately produced to Urban Outfitters.[4]

---

[4] Mr. Beck contends that an underling in Ms. Swanson's office included the letter with the file presented to Urban Outfitters without Ms. Swanson's knowledge.

Second, Ms. Swanson did not request that Urban Outfitters return the letter or even suggest that it was inadvertently produced for more than a year after its production. Generally such a long delay favors waiver. Ms. Swanson's attorney argues that he was not aware of even the existence of the document until February 2001, and yet he has not demanded that Urban Outfitters return the letter even eight months after he was informed it was in Urban Outfitter's possession. Third, DPIC concedes that Ms. Swanson produced only 40 documents – relatively, an extremely small number of documents – in response to Urban Outfitter's initial production request. The fact that this letter, written on DPIC letterhead, was included with only 40 other documents indicates that the letter was voluntarily surrendered, and not hidden among thousands of documents and accidently produced.

Turning to the extent of the disclosure, the Court notes that it was fairly limited, in that Ms. Swanson produced only one privileged document. However, the document specifically referenced a prior (and allegedly privileged) communication, Ms. Swanson produced the document in the context of formal discovery, and there are no allegations that Ms. Swanson or Mr. Beck had insufficient time to carefully consider and review the documents for release. Finally, the fairness factor, the most subjective of the five factors, favors both parties. Although it might strike Ms. Swanson as unfair to be penalized for releasing one document, the fact that Urban Outfitters was in possession of this document for over a year and that it was produced after consulting with her attorney indicates that it was not the production of the document that was inadvertent, only its consequence.

While DPIC argues that public policy considerations overwhelmingly favor a finding of no disclosure, the Court disagrees. Notably, Michigan law – the state where Ms. Swanson

8

resides and works, and where the underlying dispute arose – does not recognize communications between insureds and insurers as privileged. Moreover, application of the balancing tests places responsibility for protecting the confidentiality of sensitive documents squarely on the party asserting the privilege, and enables parties to overcome a finding of waiver even after an inadvertent disclosure by taking appropriate measures, such as demanding that the document be returned immediately. DPIC and Ms. Swanson failed to take adequate measures to insure the confidentiality of their documents and they now bear the responsibility for that failure. *See Mergentime Corp. v. Washington Metropolitan Area Transportation Authority*, 761 F. Supp. 1, 2 (D.D.C. 1991)[5]; *Federal Deposit Ins. Corp. v. Singh*, 140 F.R.D. 252 (D. Me. 1992) ("The court will grant no greater protection to those who assert the privilege than their own precautions warrant.")

Because the balance of the factors favors waiver, the Court finds that the privilege is waived. The Court must decide, however, the scope of Ms. Swanson's waiver. "Voluntary disclosures, as opposed to inadvertent disclosures, waives the privilege as to remaining documents of the same subject matter." *Golden Valley*, 132 F.R.D. at 207. Although all of the documents listed in the privilege log are somewhat related to the contents of the January 11th letter, the Court finds that a much narrower interpretation of subject matter is appropriate. After conducting its *in camera* review, the Court finds Ms. Swanson's waiver is limited to those

---

[5] Quoting *In re Sealed Case*, 877 F.2d 976 (D.D.C. Cir. 1989), the *Mergentime* court stated that courts recognize "various degrees of voluntariness in waivers of the attorney-client privilege." 761 F. Supp at 2-3 "Normally the amount of care taken to ensure confidentiality reflects the importance of that confidentiality to the holder of the privilege. To hold . . . that an inadvertent disclosure will waive the privilege imposes a self-governing restraint on the freedom with which organizations . . .label documents . . . as privileged." *Id.* at 3.

documents that discuss Ms. Swanson's initial notification of a potential claim to DPIC, which includes documents 11, 14, 15, 16 and 17 of the privilege log. The remaining documents remain protected by the attorney-client privilege and/or work-product doctrine.

**IT IS THEREFORE ORDERED** that:

Petitioner's Petition to Enforce Subpoena be, and the same hereby is, **GRANTED IN PART, AND DENIED IN PART.**

DATED: October 29, 2001    Enter:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge